**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **TAMEKA ALLEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:22-cv-807-ALM-KPJ** |
| **DR. RICHARD C BENSON,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants Dr. Richard C Benson, Dr. Rafael Martin, Colleen

Dutton, Ellen Ammons, Janette Bell, Sarah Dorsey, Agapito Garcia, Bradley Powell (together, the

"Individual Defendants"), and the University of Texas at Dallas's ("UT Dallas" or "UTD", and

together with the Individual Defendants, the "State Defendants") Motion to Dismiss Plaintiff's

First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (the "Motion") (Dkt. 15).

Plaintiff filed a response (Dkt. 17) and the State Defendants filed a reply (Dkt. 19). For the reasons

that follow, the Court recommends the Motion (Dkt. 15) be **GRANTED IN PART** and **DENIED**

**IN PART**.

## I.       BACKGROUND

On September 21, 2022, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed the

complaint (Dkt. 1) asserting the Individual Defendants in their official capacities and UTD violated

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1), 2000e(j) ("Title VII") and

the Americans with Disabilities Act of 1990, 104 Stat. 330, 42 U.S.C. §§ 12111–12117 ("ADA")

by terminating Plaintiff's employment and refusing to grant Plaintiff a religious exemption and/or

1

accommodation. *See* Dkt. 1 at 1–5. On October 19, 2022, Plaintiff filed the amended complaint (the "Amended Complaint") (Dkt. 5) reasserting the Individual Defendants in their official capacities and UT Dallas violated Title VII and Title I of the ADA by terminating Plaintiff's employment and refusing to grant Plaintiff a religious exemption and/or accommodation. *See* Dkt. 5 at 5. Specifically, Plaintiff alleges the State Defendants refused to provide "reasonable accommodations for [Plaintiff's] sincerely held religious beliefs and terminated [her employment] without a dialogue process to further explain [Plaintiff's] beliefs and practices in lieu of the mandatory COVID-19 testing program." *Id.* at 6. Plaintiff asserts the following:

> As a Christian, I believe in the practice of faith-based decision making and not fear-based decision making. Putting the fear of man above the fear of God is a dishonor to God, but God honors a man who chooses to fear Him and not man as exemplified in the bible in the book of Daniel 3 and Esther 3. Also, Proverbs 29:25 states, "The fear of man will prove to be a snare, but whoever trusts in the Lord is kept safe. Fear-based decision making will only lead to entrapments that will impede freedom of choice.["]

> UTD's leadership used fear tactics to coerce testing by threatening disciplinary action for anyone who didn't participate in their **mandatory** COVID testing program. UTD's Consent/Enrollment form (sent to me via email, on June 23, 2021, from the Office of Human Resources) required my signature to **consent to voluntary** (freedom of choice) specimen testing. The form also stated that, consent would remain in effect until revoked in writing and "**the test alone may not be sufficient** to detect or rule out the possibility that you are infected with SARS-CoV-2 . . ."

*Id.* (emphases in original). Plaintiff alleges Dr. Richard Benson sent an email on August 16, 2021, informing staff and students at UT Dallas that they were required to participate in UT Dallas's COVID-19 testing program, and on September 22, 2021, Dr. Rafael Martin sent an email informing employees that they must test for COVID-19 via the on-campus testing program, as external testing results would not be accepted. *See id.*

Plaintiff further alleges she received an email on October 4, 2021, from Colleen Dutton informing Plaintiff that if she did not comply with the COVID testing mandate by October 6, 2021,

Plaintiff would be subject to disciplinary action. *See id.* Plaintiff further asserts that she received an email on October 18, 2021, from UT Dallas's employee relations informing Plaintiff they had received her request for an exemption and "there were **no exemptions** to COVID testing." *Id.* (emphasis in original). Plaintiff asserts that on October 20, 2021,  UT Dallas's Office of Human Resources emailed Plaintiff a "Declaration of Objection to Any COVID-19 Testing form which meted out [Plaintiff's] punishment for refusing to take the COVID-19 test," including that Plaintiff would not be permitted to work in-person or remotely and would be required to utilize vacation time while out of the office along with other disciplinary actions. *See id.* Plaintiff alleges that on November 1, 2021, she was informed by Bradley Powell that Plaintiff was placed on paid leave beginning October 21, 2021, until her vacation hours were exhausted, and Plaintiff asserts she was placed on unpaid leave beginning October 29, 2021, until her final termination on January 31, 2022. *See id.* at 6–7. Plaintiff asserts she was also informed by Janette Bell on November 18, 2021, that her thirty-day leave of absence had been extended by Plaintiff's department through January 31, 2022, and Plaintiff would not be permitted to work until she "submitted to the COVID test or UTD ended the COVID testing program." *Id.* at 7.

Plaintiff contends the COVID-19 test "didn't meet ADA standards of 'job relatedness and business necessity'" and the "COVID test used by UTD (Abbott Alinity-m) was issued a Class I device recall for producing false positive results." *Id.* Plaintiff alleges that on August 16, 2021, she "sent an email to the C19 Resource Group in the Employee Relations department asking who was the manufacturer of the test, and if the test was accurate along with other questions." *Id.* Plaintiff further asserts she informed Employee Relations on October 22, 2021, that the manufacturer of the Abbott Alinity-m COVID test issued an "Urgent Field and Safety Notice/Field Correction Recall." *Id.* Plaintiff asserts she corresponded with Ellen Ammons regarding testing and Plaintiff

was informed that "UTD is moving forward with COVID testing. You were given the option to take a saliva test as an alternative to the nasal swab test, which you objected to." *Id.* Plaintiff alleges she was not allowed to work remotely even though she was in a "remote work agreement" with UT Dallas beginning June 1, 2021 until October 21, 2021, and she remained in possession of the remoting work equipment provided by UT Dallas until her termination on January 31, 2022. *Id.* at 8. Plaintiff asserts the Texas Workforce Commission informed Plaintiff she was not eligible for unemployment benefits because the Texas Workforce Commission's "**investigation found that [Plaintiff's] employer fired [Plaintiff] for a reason that was not misconduct connected with the work.**" *Id.* (emphasis in original).

Plaintiff seeks "lost wages and benefits plus interest, job reinstatement with promotion, loss of future wages/front pay and benefits[,] emotional distress/pain and suffering, attorney's fees and litigation costs, punitive damages and injunctive relief." *Id.* at 9. In support of her Amended Complaint (Dkt. 5), Plaintiff includes her U.S. Equal Employment Opportunity Commission ("EEOC") Determination and Notice of Rights Form dated July 23, 2202 (Dkt. 5-1).

On December 16, 2022, the State Defendants filed the Motion (Dkt. 15), wherein the State Defendants argue Plaintiff's ADA claims are jurisdictionally barred by sovereign immunity. *See id.* at 3. In support of this argument, the State Defendants assert UT Dallas is an arm of the State of Texas and Plaintiff brings her claims against all of the Individual Defendants in their official capacity. *See id.* The State Defendants assert that Title I of the ADA did not validly abrogate the States' Eleventh Amendment Immunity and the State of Texas has not waived its immunity from suit with respect to the ADA. *See id.* at 3–4 (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365–74 (2001); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326, 332 (5th Cir. 2002)). The State Defendants further assert that Plaintiff's ADA claim and her other claims fail to state a

claim. *See id.* at 4. The State Defendants argue Plaintiff's ADA claim fails as she "has not alleged any disability, much less alleged any specific facts from which this Court could conclude that disability discrimination occurred" and "she alleges facts solely regarding religious discrimination . . . ." *Id.* at 5. State Defendants further argue Plaintiff has failed to plead a facially plausible Title VII claim under the disparate treatment or the failure-to-accommodate theories. *See* Dkt. 15 at 5–10.

On January 17, 2023, Plaintiff filed her response, arguing she has "properly pled her accommodation-type case of religious discrimination."[1] Dkt. 17 at 4. Plaintiff asserts she has a bona fide religious belief "of not allowing her body or self to be placed into submission to act based on coercion and fear, but to stand firm and not to be burdened by the yoke of slavery." *Id.* at 7. Plaintiff further asserts *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376 (M.D. Pa. 2021), cited by the State Defendants, "does not support [the State Defendants'] proposition that Plaintiff has not asserted facts demonstrating that her religious beliefs conflicted with Defendants' testing requirement." Dkt. 17 at 7. Plaintiff asserts the *Federoff* case is distinguishable because Plaintiff has "articulated her religious beliefs providing both biblical foundations and references . . . ." *Id.* at 8. Plaintiff further asserts she informed the State Defendants of her religious beliefs through her request for an exemption on October 18, 2021. *See id.* at 9. Plaintiff asserts she suffered an adverse consequence for failure to comply with the employment requirement. *See id.* at 9–10. Finally, Plaintiff argues that "[State] Defendants misappl[y] the concept of reasonable accommodation by proffering the nonsensical argument that instead of the nasal swab, Plaintiff was offered to submit to the saliva test." *Id.* at 10.

---

[1] On January 4, 2023, Plaintiff filed a motion to extend the time for her to file a response in opposition (the "Motion for Extension of Time") (Dkt. 16), wherein she requested additional time to file her response. *See id.* at 3. On January 19, 2023, the Court granted the Motion for Extension of Time (Dkt. 16) and Plaintiff's response (Dkt. 17) was deemed filed. *See* Dkt. 18.

On January 24, 2023, the State Defendants filed their reply (Dkt. 19), wherein the State Defendants argue: Plaintiff does not contest that her ADA claim is barred; Plaintiff has failed to state a viable claim against the State Defendants under Title VII, as UT Dallas lacked any discriminatory intent and offered Plaintiff a reasonable accommodation; and Plaintiff failed in her duty to cooperate in achieving accommodation. *See generally* Dkt. 19.

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides that a party may assert by motion the defense of lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 118, 1187 (2d Cir. 1996)). A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *See Ramming*, 281 F.3d at 161. Addressing Rule 12(b)(1) arguments first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

### B.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v.*

*Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, (1986)). "The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir.), *cert. denied*, 143 S. Ct. 109 (2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

Additionally, when the plaintiff is proceeding *in forma pauperis*, courts must dismiss the case if, at any time, it is determined the complaint fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (per curiam) ("The district court may dismiss an in forma pauperis proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met."

(quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990))). In reviewing a plaintiff's complaint under Section 1915, courts apply the same standard that is applied to motions filed under Federal Rule of Civil Procedure 12(b)(6). *See Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016) (citing *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998)).

### III.    ANALYSIS

#### A.  ADA Claim

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). "A Plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Just., Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

The State Defendants assert they are entitled to Eleventh Amendment sovereign immunity because Plaintiff brought her claims against the Individual Defendants in their official capacities and UT Dallas is an arm of the State of Texas created by statute. Dkt. 15 at 3–4. The State Defendants further argue Plaintiff has failed to state a claim as Plaintiff does not allege she has any disability or that she suffered disability discrimination, but rather "alleges facts solely regarding religious discrimination." *Id.* at 5. Plaintiff did not respond to the State Defendants' assertion of sovereign immunity, but rather contends the State Defendants failed to provide her a

reasonable accommodation. *See* Dkt. 17 at 10. In their reply (Dkt. 19), the State Defendants argue Plaintiff has not contested the State Defendants' assertion that Plaintiff's ADA claim is barred and, thus, has "abandoned" such claim. *See* Dkt. 19 at 2 (collecting cases).

For the following reasons, the Court finds the State Defendants are entitled to Eleventh Amendment immunity as to Plaintiff's ADA claims for damages and Plaintiff has failed to state a claim against the Individual Defendants as to her request for injunctive relief.

### 1. *Eleventh Amendment Immunity*

The Supreme Court has "made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting states." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (citations omitted). "Eleventh Amendment immunity extends to suits brought against a state by its own citizens as well as by citizens of another state or foreign country." *Yowman v. Jefferson Cnty. Cmty. Supervision & Corrs. Dep't,* 370 F. Supp. 2d 568, 582 (E.D. Tex. 2005) (collecting cases). "Even in cases where the State itself is not a named defendant, the State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Because Eleventh Amendment immunity "deprives the court of jurisdiction, . . . the barred claims 'can be dismissed only under Rule 12(b)(1) and not with prejudice.'" *Chalmers v. Marks*, No. Civ.A.3:03cv468, 2003 WL 21468509, at *2 (N.D. Tex. June 19, 2003) (quoting *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996)).

The Supreme Court held in *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001) that in enacting Title I and Title V of the ADA, Congress did not abrogate the states' Eleventh Amendment sovereign immunity. *See Bd. of Trs. of Univ. of Alabama v. Garrett*,

531 U.S. 356, 374 (2001); *accord Perez*, 307 F.3d at  326. Plaintiff does not plead, nor does it appear, that the State of Texas has waived its right to sovereign immunity as to Plaintiff's Title I ADA claims. The State Defendants assert, and Plaintiff does not dispute, that UT Dallas is an arm of the State of Texas created by statute. *See* Dkt. 15 (quoting Tex. Educ. Code §§ 70.01 et seq.) ("'The Board of Regents of The University of Texas System shall establish and maintain a state-supported general academic institution of higher education to be known as The University of Texas at Dallas.'"). Similarly, Plaintiff brings her claims against the Individual Defendants in their official capacity and, as such, the Individual Defendants are entitled to Eleventh Amendment sovereign immunity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *accord Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011). Thus, Plaintiff's claims for money damages under the ADA against the State Defendants are barred by the Eleventh Amendment.

The Fifth Circuit recognizes an exception to Eleventh Amendment sovereign immunity that allows for injunctive relief against individual state officials, including for job reinstatement, as Plaintiff requests here. *See Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020) ("[The Fifth Circuit has] stated that the *Ex parte Young* doctrine was an appropriate vehicle for pursuing reinstatement to a previous job position—as the case here. The district court therefore correctly ruled that Plaintiffs' injunctive prayer is not subject to the Eleventh Amendment's jurisdictional bar." (citing *Warnock*, 88 F.3d at  343 )). As to UT Dallas, Plaintiff's ADA claims are barred in their entirety, including for injunctive relief, because "[t]he Fifth Circuit has . . . clarified that claims for such injunctive relief may only be brought against *state officials*, as

opposed to the state or a state entity." *Kagarice v. Univ. of N. Tex.*, No. 4:17-CV-00509, 2018 WL 1163218, at *3 (E.D. Tex. Feb. 9, 2018), *R. & R. adopted*, 2018 WL 1156273 (E.D. Tex. Mar. 4, 2018) (citing *Cozzo v. Tangipahoa Par. Council –President Gov't*, 279 F.3d 273, 280–81 (5th Cir. 2002)) (emphasis in original); *Turnage v. Britton*, 29 F.4th 232, 239 (5th Cir. 2022) ("The *Young* Exception to state sovereign immunity applies when the party invoking it establishes three criteria. First, the complaint must name individual state officials as defendants in their official capacities . . . .") (quotation omitted).

Therefore, Plaintiff's ADA claims for money damages against the State Defendants are barred, and Plaintiff's ADA claims against UT Dallas are barred in their entirety. Accordingly, the Court turns to whether Plaintiff has sufficiently pleaded an ADA claim for injunctive relief against the Individual Defendants.

2. *Failure to State a Claim*

In the Amended Complaint, Plaintiff does not allege she is a qualified individual with a disability (Dkt. 5). Rather, Plaintiff alleges "UTD didn't comply with ADA standards which require testing prior to entry into the workplace using an accurate and reliable test" and that the State Defendants refused to grant her a "religious exemption." Dkt. 5 at 5. "'As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability.'" *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996)). A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" 29 C.F.R. § 1630.2(g). Plaintiff appears to have conflated her claims for religious discrimination with claims for discrimination based on disability. As Plaintiff does not assert *any* disability, Plaintiff clearly has failed to plead a claim for ADA discrimination.

Additionally, the Fifth Circuit has held that a plaintiff's lack of response to an argument in a motion to dismiss and a "failure to pursue [a] claim beyond her complaint constitute[s] abandonment." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001)); *accord Butler v. Collins*, No. 3:18-CV-37-L, 2019 WL 13031414, at *4 (N.D. Tex. Mar. 31, 2019). In the present case, Plaintiff does not respond to the State Defendants' arguments as to her Title I ADA claim and, thus, she has abandoned such a claim. *See id.* Accordingly, for this additional reason, Plaintiff fails to state an ADA claim against the Individual Defendants.

Thus, Plaintiff fails to state an ADA claim for injunctive relief against the Individual Defendants.

### B.  Title VII Claim

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but it is not required to incur undue hardship." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000) (citation omitted); *accord Carter v. Transport Workers Union of America Local 556*, 353 F. Supp. 3d 556, 577 (N.D. Tex. 2019).

The Fifth Circuit "analyzes a Title VII claim for failure to accommodate religious observances under a burden-shifting framework akin to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework." *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014). Accordingly, the plaintiff-employee must first establish a prima facie case of religious discrimination and, if she does, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013) (citations omitted).

The State Defendants argue Plaintiff has failed to state a Title VII claim under either a disparate treatment or failure-to-accommodate theory. Dkt. 15 at 5–10. Plaintiff responds that she has "properly pled her accommodation-type case of religious discrimination." Dkt. 17 at 4. Plaintiff further argues that the State Defendants "missappl[y] the concept of reasonable accommodation by proffering the nonsensical argument that instead of the nasal swab, Plaintiff was offered to submit to the saliva test." Dkt. 17 at 10. Plaintiff asserts she has sufficiently pled the elements of a "religious accommodation" claim because: Plaintiff has established that she has a bona fide religious belief "that as a Christian, she believes in the practice of faith-based decision making and not fear-based decision making, and that to be fearful of man over God dishonors God, as explained in the Biblical Books of Daniel, Ch. 3, and Esther, Ch. 3," *Id.* at 6–7; Plaintiff informed the State Defendants of her request for a religious exemption on October 18, 2021, and "she received a Declaration of Objection to Any Covid-19 Testing form on or about October 20, 201, which meted out her punishment for refusing to take the test notwithstanding her statements of religious beliefs," *Id.* at 9; and Plaintiff suffered an adverse consequence for failure to comply with the conflicting employment requirement, *see id.* at 9–10.

In their reply (Dkt. 19), the State Defendants argue "[t]o the extent that Plaintiff intended to allege a Title VII disparate treatment claim, that claim is deemed abandoned because Plaintiff has failed to defend or pursue it in response to [the Motion (Dkt. 15)]." Dkt. 19 at 3. The State Defendants further argue Plaintiff has failed to plead sufficient facts as to her failure-to-accommodate claim because "(1) UT Dallas lacked any discriminatory intent and offered Plaintiff a reasonable accommodation, which she refused; and (2) Plaintiff failed in her duty to cooperate in achieving accommodation." *Id.*

As a preliminary matter, Plaintiff does not appear to assert a disparate treatment claim under Title VII; rather, Plaintiff asserts only a failure-to-accommodate religious discrimination claim. The State Defendants argue that to the extent Plaintiff has alleged a disparate treatment claim, such claim fails because Plaintiff has not alleged any facts to support that she was treated less favorably than a similarly situated employee outside her protected class. *See* Dkt. 15 at 6 (citing *Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719, 723 (5th Cir. 2011) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)). Plaintiff clarified in her response (Dkt. 17) that she is raising a failure-to-accommodate religious discrimination claim—not a disparate treatment claim. *See id.* at 4 ("Plaintiff has properly pled her accommodation-type case of religious discrimination . . . an employee establishes a prima facie religious accommodation case by showing . . . ."). Furthermore, Plaintiff does not respond to the State Defendants' arguments that Plaintiff has failed to plead a disparate treatment claim. *See generally id.* To reiterate, the Fifth Circuit has held that a plaintiff's lack of response to an argument in a motion to dismiss and a "failure to pursue [a] claim beyond her complaint constitute[s] abandonment." *Black*, 461 F.3d at 588 n.1 (citation omitted). Thus, the Court considers only whether Plaintiff has sufficiently pleaded a Title VII failure-to-accommodate claim

14

for religious discrimination based on Plaintiff's clarification in her filings and abandonment of such a claim.

For the reasons that follow, the Court finds Plaintiff has failed to plead a Title VII failure-to-accommodate religious discrimination claim against the Individual Defendants; and Plaintiff has sufficiently pleaded a Title VII failure-to-accommodate religious discrimination claim against UT Dallas at the motion to dismiss stage.

### 1.  The Individual Defendants

"While Title VII defines the term employer to include 'any agent' of an employer, [the Fifth Circuit] does not interpret the statute as imposing individual liability for such a claim." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (citation omitted). The Fifth Circuit has explained that "Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII." *Id.* (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994)); *accord Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002). "Thus, a Title VII suit against an employee is actually a suit against the [employer]" and the Fifth Circuit "has . . . concluded that outside of an action against an officer personally, a plaintiff does not have an action against both the [employer] and its officer in an official capacity." *Id.* (internal quotations omitted). Therefore, the Fifth Circuit holds that "a party may not maintain a suit against both an employer and its agent under Title VII." *Id.*

In the present case, Plaintiff is asserting her claims against the Individual Defendants in their official capacities, i.e., in their role as supervisors and administrators at UT Dallas, while simultaneously bringing suit against UT Dallas. *See* Dkt. 5 at 5. Plaintiff "may not maintain her Title VII claims against the Individual Defendants in their official capacities, as a plaintiff may

not 'maintain an action against both a corporation and its agent in an official capacity [in a Title VII action] because effectively the [employer] could be held liable twice for the same act.'" *Jackson v. Texas Juv. Just. Dep't*, No. A-21-CV-01000-RP, 2022 WL 2181809, at *3 (W.D. Tex. June 16, 2022) (quoting *Indest*, 164 F.3d at 262); *Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 208 (5th Cir. 2020) (per curiam) ("Thus, because [the plaintiff] opts to sue [the defendant employer] under Title VII . . . he may not simultaneously sue the individual defendants."); *Caple v. Off. of Att'y Gen.*, No. CIV.A. 3:01-CV-1853-, 2002 WL 31987132, at *2 (N.D. Tex. Nov. 5, 2002) (dismissing the plaintiff's claims for damages and injunctive relief under Title VII against the individual defendants in their official capacity as duplicative because a "plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity" (quoting *Smith*, 298 F.3d at 449)). Because Plaintiff has asserted the Individual Defendants were acting as agents on behalf of UT Dallas, the Court finds Plaintiff's Title VII claims against the Individual Defendants necessarily fail as "relief under Title VII is available only against an employer, not an individual supervisor or fellow employee." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) (internal citations omitted); *Tate v. Dall. Indep. Sch. Dist.*, No. 3:21-CV-0895-B-BH, 2022 WL 272711, at *6 (N.D. Tex. Jan. 10, 2022), *R. & R. adopted*, 2022 WL 270859 (N.D. Tex. Jan. 28, 2022) ("Based on the allegations in the complaint, [the employees] were acting as agents of [the employer] at the time of those actions, so any Title VII claims against them are not cognizable under Fifth Circuit law, regardless of the capacity in which she sues them.") (internal citations omitted).[2]

---

[2] While Plaintiff does not allege her Title VII claims against the Individual Defendants in their personal capacities, such a claim would also necessarily fail as "Title VII only applies to employers and defendants in their official capacities . . . ." *Jackson*, 2022 WL 2181809, at *2 (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *Mullet v. Touro Infirmary*, No. CV 19-11851, 2019 WL 6527895, at *2 (E.D. La. Dec. 4, 2019)).

Accordingly, Plaintiff's Title VII failure-to-accommodate claim against the Individual Defendants must be dismissed because Plaintiff cannot maintain a Title VII suit against both UT Dallas and the Individual Defendants in their official capacity, and her allegations assert the Individual Defendants acted as agents of their employer UT Dallas.

### 2. *Prima Facie Case*

The Fifth Circuit has held that to establish a prima facie case of religious discrimination under Title VII, "the plaintiff must present that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (citing *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 n. 9 (5th Cir.2001)). Although a plaintiff does "not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, [the plaintiff has] to plead sufficient facts on all of the ultimate elements" of his or her Title VII claim to allege a plausible claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

In the Amended Complaint (Dkt. 5), Plaintiff asserts she has a bona fide religious belief, this belief conflicted with the COVID-19 testing policy, she informed the State Defendants of her belief, and she suffered an adverse employment action, i.e. termination, as a result of this belief. *See* Dkt. 5 at 5–10. The State Defendants largely do not challenge that Plaintiff has set forth a prima facie case. *See* Dkt. 15 at 7–10. However, in a footnote, the State Defendants argue:

> Plaintiff's focus on the science of testing throughout both her Amended Complaint, . . . and her explanation of her refusal on UT Dallas's COVID testing exemption request form . . . suggest that Plaintiff has not alleged a cognizable failure-to-accommodate claim because she has not alleged facts showing that it was *her* religious belief that conflicted with a requirement of her employment, rather than her scientific or medical beliefs.

*Id.* at 8 n.3 (citing *Federoff*, 571 F. Supp. 3d at 387). Plaintiff responds that she "has demonstrated that she has a deeply held religious conviction of not allowing her body or self to be placed into submission to act based on coercion and fear, but to stand firm and not be burdened by the yoke of slavery. This conviction clearly conflicts with Defendants' mandatory Covid-19 testing." Dkt. 17 at 7. Plaintiff further argues her case is distinct from *Federoff* because Plaintiff "articulated her religious beliefs providing both biblical foundation and references" compared to the *Federoff* plaintiffs whose counsel "vaguely" stated their beliefs and had raised relief "that was 'at war with itself' in that they opposed the test but not if all employees were required to be administered it." Dkt. 17 at 8 (quoting *Federoff*, 571 F. Supp. 3d at 388).

The Fifth Circuit "has cautioned that judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" *Davis*, 765 F.3d at 486 (quoting *Tagore*, 735 F.3d at 328). "Indeed, 'the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged,' and 'claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions.'" *Id.* (quoting *Tagore*, 735 F.3d at 328). Courts must focus their analysis on whether the plaintiff sincerely holds the alleged religious beliefs, and not on the method or manner in which the plaintiff adheres to the alleged belief. *See id.* at 486–87 ("Thus, even if attendance at the 'community service event' was arguably not a religious tenet but a mere request by her Pastor, '[t]hese telling arguments address an issue that is not for federal courts, powerless as we are to evaluate the logic or validity of beliefs found religious and sincerely held.'" (quoting *Cooper v. Gen. Dynamics, Convair Aerospace Div., Fort Worth Operation*, 533 F.2d 163, 166 n.4 (5th Cir. 1976))).

However, Plaintiff's allegedly sincere religious beliefs are not unchallengeable. A court in the Middle District of Pennsylvania dismissed a Title VII claim similar to Plaintiff's claim in the

18

present case. *See Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022). In

*Finkebeiner*, the court found the plaintiff's allegations that "she has a 'God given right to make

[her] own choices'—which, implicitly, her employer must unfailingly respect—would amount to

a blanket privilege and a limitless excuse for avoiding all unwanted [] obligations." *Id.* (citations

omitted). As is the case here, it is unclear how Plaintiff's belief of "not allowing her body or self

to be placed into submission to act based on coercion and fear," Dkt. 17 at 7, would not apply to

any law, ordinance, and traffic or municipal code that regulates Plaintiff's daily life; or how

Plaintiff's allegations as to the science underlying the saliva test are not the "'purely secular

considerations'" that the Supreme Court has established are not protected religious beliefs.

*Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *4 (E.D. La. Apr. 11,

2023) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)). Keeping in mind the Fifth

Circuit's warning that the inquiry into the sincerity of religious beliefs should be handled with

judicial shyness, caution should be exercised and the State Defendants' passing argument in a

footnote is insufficient to dismiss Plaintiff's failure-to-accommodate claim at this early stage. *Cf.*

*Troulliet*, 2023 WL 2894707, at *5 (finding the plaintiff failed to allege a sincerely held religious

belief because "[s]he has failed to allege with any particularity that she had a bona fide religious

belief . . . At most, she alleges that she desired a religious exemption from [the defendant's] vaccine

requirement.").

      Accordingly, the Court finds Plaintiff has sufficiently pleaded the ultimate elements of a

Title VII failure-to-accommodate religious discrimination claim against UT Dallas.

     *3.   Reasonable Accommodation and Undue Hardship*

      The State Defendants argue that "[e]ven if Plaintiff established a prima facie case of failure

to accommodate, Plaintiff has still failed to state a cognizable claim, because UT Dallas's COVID

testing exemption request form proves that UT Dallas did offer Plaintiff a reasonable accommodation . . . ." Dkt. 15 at 8. The State Defendants further argue that an employer's offer of a reasonable accommodation triggers an employee's duty to cooperate in achieving accommodation of the employee's religious beliefs and Plaintiff fails to allege that she proposed any other possible accommodation. *See id.* at 9. Plaintiff argues the offer of a saliva test was not a reasonable accommodation because she was working remotely and "she did not agree to the invasive and recalled Covid-19 test that was in contradiction with her religious views . . . ." Dkt. 17 at 11. In the reply (Dkt. 19), the State Defendants argue Plaintiff has failed to allege UT Dallas's COVID-19 testing policy was instituted for the purpose of discriminating against those who oppose such testing for religious reasons and that Plaintiff misunderstands her burden to cooperate in achieving accommodation. *See generally id.*

The Fifth Circuit has explained that "[a] court . . . inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). Accordingly, "[s]uch inquiries are better suited to summary judgment" and plaintiff must only plead the "ultimate elements" of a claim. *Id.* In the present case, Plaintiff has alleged "more than a sheer possibility," *Iqbal*, 556 U.S. at 678, that her alleged sincere religious beliefs and practice were a factor in the adverse employment decision— i.e., her refusal to participate in COVID-19 testing allegedly on the basis of her religious beliefs was the cause for her termination. Dkt. 5 at 6–7. Whether accommodating Plaintiff's religious beliefs would have imposed an undue hardship is a "fact-intensive inquiry that may be addressed

at the summary judgment stage or at trial."[3] *Carter*, 353 F. Supp. 3d at  578 (citing *Antoine*, 713 F.3d at 834; *Stolley v. Lockheed Martin Aeronautics Co.*, 228 F. App'x 379, 382-83 (5th Cir. 2007) (per curiam)). The Court further notes that the recent decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023) explains  "undue hardship" under Title VII "is shown when a burden is substantial in the overall context of an employer's business" and that "[t]his fact-specific inquiry comports with both [*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, (1977)] and the meaning of 'undue hardship' in ordinary speech." *Groff*, 143 S. Ct. at 2294.

Thus, at this early stage, the Court recommends denying the Motion (Dkt. 15) as to Plaintiff's Title VII failure-to-accommodate claim against UT Dallas.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion (Dkt. 15) be **GRANTED IN PART** and **DENIED IN PART.** The Court recommends the Motion (Dkt. 15) be **GRANTED** as follows: Plaintiff's ADA claims for money damages against the Individual Defendants be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's ADA claims against UT Dallas be **DISMISSED WITHOUT PREJUDICE** in their entirety pursuant to the State Defendants' entitlement to sovereign immunity; and Plaintiff's ADA claims for injunctive relief against Individual Defendants be **DISMISSED WITH PREJUDICE** for failure to state a claim. The Court further recommends the Motion (Dkt. 15) be **DENIED** to the extent it seeks dismissal of Plaintiff's Title VII failure-to-accommodate claim against UT Dallas. The Court finally

---

[3] The State Defendants' cited cases underscore that this is not the correct procedural posture to consider such arguments. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986) (trial); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) (motion for judgment as a matter of law); *Bruff v. N. Mississippi Health Servs., Inc.*, 244 F.3d 495 (5th Cir. 2001) (motion for judgment as a matter of law); *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141 (5th Cir. 1982) (judgment on partial findings);  *Horvath v. City of Leander*, 946 F.3d 787 (5th Cir. 2020), *as revised* (Jan. 13, 2020) (motion for summary judgment); *Price v. Fed. Express Corp.*, 283 F.3d 715 (5th Cir. 2002) (motion for summary judgment).

recommends Plaintiff's Title VII failure-to-accommodate claim against the Individual Defendants be **DISMISSED WITH PREJUDICE** *sua sponte* pursuant to U.S.C. § 1915(e)(2)(B)(ii).

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party filing objections is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 24th day of July, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE